**RECEIVED**

SEP 2 8 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

### I.     **Introduction Summary Of Complaint**

Defendant Various, Inc., an Internet provider of on-line personal advertising and dating services, moves to dismiss plaintiff's Complaint and all its claims against Various, Inc. for failure to state a claim for which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff is a woman who claims that her former boyfriend, defendant Zach Wilhelm, posing as plaintiff, posted personal advertisements on defendant Various, Inc.'s websites. These advertisements falsely claimed that plaintiff was seeking sexual encounters with men and women. Plaintiff's claims against defendant Various, Inc. are barred by the Communications Decency Act, 42 U.S.C. § 230, which protects providers of interactive computer services, such as Various, Inc., from liability for content posted by third parties. Accordingly, plaintiff's Complaint and all claims contained therein against defendant Various, Inc. should be dismissed.

### II.     **Summary Of Complaint**

Plaintiff's complaint alleges the following:

Defendant Various, Inc. ("Various") operates interactive Internet web sites, including www.adultfriendfinder.com, www.dating-review.co.uk and others[1]. (Complaint, ¶ 2). Plaintiff Shelly Landry-Bell at one time dated defendant Zachary Wilhelm ("Wilhelm"), but terminated the relationship to Wilhelm's dismay. (¶¶ 7,9).[2] Plaintiff further alleges that subsequently, Wilhelm generated numerous web advertisements on Various' sites with pictures and text suggesting that plaintiff sought sexual encounters with men and women. (¶ 18). Plaintiff never posted her personal information or pictures to any of Various' web sites. (¶ 10). Plaintiff received a phone call from a male asking about her purported adult content ad posting on www.adultfriendfinder.com. (¶ 11). Plaintiff found, to her shock, anger and dismay, that there was a display on Various' websites about her, using her former married name, by which she is

---

[1] Defendant Various, Inc. denies the allegations of Plaintiff's complaint and sets them forth herein only for the purpose of this 12(b)(6) motion, which shall not be deemed an admission of any facts alleged by plaintiff. Various is not aware of any websites owned or operated by it with the extension ".uk"

[2] Paragraph references are to paragraphs of plaintiff's Complaint, unless otherwise stated.

2

Dockets.Justia.com

still widely known, containing her picture, and suggesting that she would engage in lewd and obscene acts. (¶ 12).

Plaintiff inquired of Various about how her name and picture appeared on its websites, but Various refused to provide information about the display. (¶ 16). Various failed to identify the persons responsible for posting the false information about plaintiff, failed to maintain a reasonable or adequate "authentication procedure," failed to obtain the true identities and e-mail addresses of persons who have viewed the postings about her, and invaded plaintiff's privacy and libeled her by its continuous republications of the material. (¶ 21). Various, according to its website, maintains editorial control and the right to edit or remove postings made to its sites.

As a result of the false postings about plaintiff, she has sustained damages including pain, suffering, embarrassment, emotional distress, fear for her safety, out of pocket expenses and other damages. (¶ 28).

**III.    Argument**

**A.    Plaintiff's Claims Against Various Are Barred By The Communications Decency Act.**

When ruling on a 12(b)(6) motion, the court must liberally construe the complaint in favor of the plaintiff and assume the truth of all pleaded facts. Oliver v. Scott, 276 F.3d 736, 740 (5th Cir.2002). The court may dismiss a claim, however, when it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Frank v. Delta Airlines Inc., 314 F.3d 195, 197 (5th Cir. 2002). In this case, plaintiff's complaint, even if assumed to be true, does not state a claim for relief against defendant Various because liability of Various is barred by the Communications Decency Act, 47 U.S.C. § 230. Accordingly, plaintiff's complaint should be dismissed, as to Various, for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6).

Title 47 U.S.C., § 230 is part of the Communications Decency Act ("CDA") of 1996. The CDA embodies a strong legislative intent to foster the Internet and to protect interactive computer services, such as those operated by defendant Various, against liability of the sort that plaintiff attempts to impose here.

Subsection(a) of 47 U.S.C., § 230 sets forth Congressional findings about the "extraordinary advance" the Internet provides in the availability of information resources (subsection (a)(1)), the importance of "a minimum of government regulation" to the Internet's "flourishing" (subsection (a)(4)), and the growing reliance of American on the Internet for "a variety of ... entertainment services" (subsection (a)(5)).

Subsection (b) of 47 U.S.C., § 230 states that it is the policy of the United States "to promote the continued development of the Internet and other interactive computer services and other interactive media" and to keep it "unfettered by Federal or State regulation" (subsections (b)(1) and (2)).

Subsection (f)(2) defines an "interactive computer service" as "any information service, system or access software provider that provides or enables computer access by multiple users to a computer server." It is clear from plaintiff's Complaint that defendant Various' services are interactive computer services. (See Complaint, ¶ 2[a]: "Various, Inc. ...operates various web sites, over the internet, and which are made available for interactive entry and display in Louisiana [.]").

Plaintiff's complaint attempts to state claims for liability of Various based upon the publication of false personal advertisements on its web sites by defendant Wilhelm. This kind of liability is barred by 47 U.S.C. § 230. Subsection (c)(2) of 47 U.S.C. § 230 provides: ***"No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."*** (emphasis added) Under subsection (f)(3), an information content provider is "any person or entity that is responsible, in whole or in part, for the creation of development of information provided through the Internet or any other interactive computer service." Wilhelm is clearly an "information content provider" under this statute.

Subsection (e)(3) of 47 U.S.C. § 230 provides: ***"No cause of action may be brought and no liability imposed under any State or local law that is inconsistent with this section."*** (Emphasis added). Plaintiff's claims against Various, while not separately specified in her Complaint, appear to all be State law tort claims, including claims for invasion of privacy (¶

21), defamation as a "publisher" (¶¶ 23, 25), and some unspecified "strict liability" tort based on alleged "publishing" of Wilhelm's false advertisements (¶ 26). These claims are all barred by the above-cited provisions, 47 U.S.C. § 230 (c)(2) and (e)(3).

Title 47 U.S.C. § 230 was applied to bar a plaintiff's action in a case very similar to this one See *Zeran v. America Online, Inc.*, 958 F.Supp. 1124 (E.D. Va. 1997) *aff'd* 129 F.3d 327 (4th Cir. 1997) *cert.. den.* 524 U.S. 937, 118 S.Ct. 2341, granting defendants FRCP 12(b)(6) motion to dismiss:

> "An unknown person or persons, acting without Zeran's knowledge or authority, affixed Zeran's name and telephone number to a series of notices on AOL's electronic 'bulletin board' advertising t-shirts and other items with slogans glorifying the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma in which 168 people were killed. Predictably Zeran received numerous disturbing and threatening telephone calls from people outraged with the posted notice. He now sues, claiming AOL was negligent in allowing these notices to remain and reappear on the AOL's 'bulletin board' despite having received notice and complaint from Zeran following the appearance of the first advertisement." 958 F.Supp. at 1126.

The court of appeals held that "Although Zeran attempts to artfully plead his claims as ones of negligence, they are indistinguishable from a garden variety defamation action." 129 F.3d at 332. Here, too, the dressing up of plaintiffs' claims under various theories does not change their essential nature. Both the district court and the court of appeals in *Zeran, supra*, held that Zeran could not state a cause of action that could survive 47 U.S.C. § 230. The same reasoning applies here to require Various' motion to dismiss be granted, without leave to amend:

> "By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.
>
> ...
>
> "None of this means, of course, that the original culpable party who posts defamatory message would escape accountability. ... Congress made a policy choice, however, not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Zeran v. America Online, Inc., supra*, 129 F.3d at 330-331.

At 129 F.3d 333, the *Zeran* court considered at length, and rejected, the argument that giving notice to an interactive computer service could serve as a basis for imposition of liability:

> "...they would face potential liability each time they receive notice of a potentially defamatory statement — from any party, concerning the message. Each notification would require a careful yet rapid investigation of the circumstances surrounding the posted information, a legal judgment concerning the information's defamatory character, and on-the-spot editorial decision whether to risk liability by allowing the continued publication of that information. Although this might be feasible for a traditional print publisher, the sheer number of postings on interactive computer services would create an impossible burden in the Internet context."

Moreover:

> "Because service providers would be subject to liability only for the publication of information, and not for its removal, they have a natural incentive simply to remove messages upon notification, whether the contents were defamatory or not. ... Thus, like strict liability, liability upon notice has a chilling effect on the freedom of Internet speech." *Id.*
>
> ...
>
> "More generally, notice-based liability for interactive computer service providers would provide third parties with a no-cost means to create the basis for future lawsuits. Whenever one was displeased with the speech of another party conducted over an interactive computer service, the offended party could simply 'notify' the relevant service provider, claiming the information to be legally defamatory. In light of the vast amount of speech communicated through interactive computer services, these notices could produce an impossible burden for service providers who would be faced with ceaseless choices of suppressing controversial speech or sustaining prohibitive liability. Because the probable effects of distributor liability on the vigor of Internet speech and on service provider self-regulation are directly contrary to § 230's statutory purposes, we will not assume that Congress intended to leave liability on notice intact." 129 F.3d at 333.

The *Zeran* courts held that § 230(e)(3), quoted above, pre-empted common law causes of action: "Congress' desire to promote unfettered speech on the Internet must supersede conflicting common law causes of action."

The reasoning in *Zeran* has been applied in several contexts. In *Blumenthal v. Drudge*, 992 F.Supp. 44 (D.C. Dist. Ct. 1998), America Online paid gossip columnist Matt Drudge $36,000 a year to publish the "Drudge Report" on AOL. Drudge defamed White House Assistant Sidney Blumenthal by publishing false accounts of spousal abuse. The court

6

dismissed the action against AOL on the strength of 47 U.S.C. §230. The court noted that "AOL has certain editorial rights with respect to the content provided by Drudge and disseminated by AOL by AOL, including the right to require changes in content and to remove it." 992 F.Supp. at 51. "If it were writing on a clean slate, this Court would agree with plaintiffs." *Id.* "But Congress had made a different policy choice by providing immunity even where the interactive service provider has an active, even aggressive role in making available content provided by others." *Id.* at 52.

Similarly, negligence and defamation claims and a request for an injunction against AOL could not be maintained by a company claiming that erroneous stock information damaged its value. *Ben Ezra, Weinstein and Company, Inc. v. America Online, Inc.*, 206 F.3d 980 (10th Cir. 2000). Plaintiff was denied leave to amend and the court ruled that plaintiff "offered no compelling reason to permit this futile cause to keep AOL ensnared for even one more moment." 206 F.3d at 987. See also *Green v. America Online*, 318 F.3d 465 (3d Cir.2003); *Batzel v. Smith*, 333 F.3d 1018 (9th Cir.2003); and *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003). See also Florida Supreme Court case *Doe v. America Online*, 783 So.2d 1010 (Fla.S.Ct. 2001), affirming dismissal with prejudice of a claim for negligence due to pre-emption by the CDA.

Various operates a legitimate business featuring a system for the preservation of customer anonymity. Courts have recognized "the legitimate and valuable right to participate in online forums anonymously or pseudonymously. People are permitted to interact pseudonymously and anonymously with each other so long as these acts are not in violation of the law." *Columbia Insurance Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N. D. Cal. 1999) The rights of persons to engage through pseudonyms online would be undermined if the provider of the interactive computer service were required to screen messages, confirm identities or exercise legal judgments over the contents of messages. Congress has made a policy determination that such providers cannot be sued and 47 U.S.C. § 203 pre-empts any state common law causes of action.

Plaintiff's Complaint should be dismissed, as to defendant Various, without leave to amend.

IV.    **Conclusion**

Plaintiff's claims against Various, Inc. are barred by provisions of the Communications Decency Act, 47 U.S.C., § 230. Plaintiff can state no viable claim against Various. The Complaint should be dismissed, without leave to amend.

Dated: September 27, 2005

Ira P. Rothken (T.A. - *Pro Hac Vice*, Cal. Bar 160029)
Attorney for Defendant Various, Inc.


Ira P. Rothken (T.A. - *Pro Hac Vice*, Cal. Bar 160029)
ROTHKEN LAW FIRM
1050 Northgate Drive, Suite 520
San Rafael, CA 94903
Tel:  (415) 924-4250
Fax: (415) 924-2905
Email: ira@techfirm.com

Local Counsel:
Bennett L. Politz (LSBA Bar No. 10573)
Booth Lockard Politz & LeSage LLC
920 Pierremont Road, Suite 103
P. O. Drawer 1092
Shreveport, LA 71163
(318) 222-2333
(318) 221-1035 (fax)
email: blp@blpld.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **MOTION TO DISMISS, [Fed.R.Civ.P. 12(b)(6)]** has this date been forwarded to all known counsel of record by placing a copy of same in the United States mail, postage prepaid and properly addressed.

Dated: September **28**, 2005

Bennett L. Politz (LSBA Bar No. 10573)
Booth Lockard Politz & LeSage LLC
920 Pierremont Road, Suite 103
P. O. Drawer 1092
Shreveport, LA 71163
(318) 222-2333
(318) 221-1035 (fax)
email: blp@blpld.com

9