UNITED STATES DISTRICT COURT
IN AND FOR THE WESTERN DISTRICT OF LOUISIANA
Shreveport Division


SHELLY LANDRY-BELL,

                Plaintiff,


Versus                                  Civil Action No.
                                     CV05-1526-S


VARIOUS INC., ET AL,                  **JURY DEMANDED**
              Defendants.         JUDGE STAGG

### MEMO IN SUPPORT OF OBJECTION TO REPORT AND RECOMMENDATION OF MAGISTRATE-JUDGE AND IN OPPOSITION TO MOTION TO DISMISS FILED BY VARIOUS, INC.

MAY IT PLEASE THE COURT:

      Plaintiff, SHELLY LANDRY-BELL, respectfully opposes the motion to dismiss filed by

Various, Inc., defendant, as follows:

### Facts

      "This is a case involving a cruel and sadistic identity theft." Carafano v. Metrosplash.com

Inc., 339 F.3d 1119 [9th Cir. (Cal.) 2003]. The evidence in this case will ultimately show that

Defendant is not afforded immunity under 47 U.S.C. §230[c]), which provides specified immunity

for interactive computer services that publish information received from third party information

content providers, because Defendant acted as an information content provider when it created and

developed the substance of the defamatory postings on its various web sites complained about by

plaintiff. Plaintiff asserts that Defendant's conduct is not protected by the limited immunity granted

in 47 U.S.C. 230, the "Communications Decency Act."

Dockets.Justia.com

In addition to posting lewd and sexually explicit profiles on its many "adult" sites,[1] defendant has actively blasted out the profile contents to web search engines and search spider programs which facilitate the mass advertisement of the defamatory postings. Profiles and search engine listings depicting plaintiff's personal name, information and photo were listed in search results made available solely due to Various, Inc.'s efforts to re-publish and mass advertise the profile far beyond its site and system. Searches on www.google.com displayed numerous hits showing plaintiff's information and picture with search result headings such as "Women Seeking Groups in Louisiana," "Women Seeking TS/TV/TG in Louisiana," "Women Seeking Men in Louisiana," "Women Seeking Men Near Shreveport," "Women Seeking Couples [2 Men] in Louisiana," etc. The profile and search results list plaintiff as "Horny Shelly here!" and "Anyone Wanting to Play With Me?" and "Ask Me For a Photo." That information was solely blasted out into the web search engines and spider programs by Various, Inc. Those remarks were not content from the co-defendant. The added descriptors describing plaintiff as "horny" and seeking all forms of sexual conduct came solely from Various, Inc., and was derived by Various, Inc., from the initial remarks made by its co-defendant though the co-defendant did not use the same words in the profile data he submitted as shown in the profile in Various, Inc.'s actual site profile under plaintiff's identity and bearing plaintiff's photos [clothed; copied from www.pbrnow.com; her husband is a nationally recognized, professional bull rider, Rob Bell] and interspersed with cropped naked pictures of other women so as to suggest that they were naked pictures of plaintiff.

---

[1]    There are more than 60 such sites, including www.friendfinder.com, www.adultfriendfinder.com, www.passion.com, www.alt.com, www.outpersonals.com, www.gayfriendfinder.com, www.seniorfriendfinder.com, www.frenchfriendfinder.com, www.koreanfriendfinder.com, www.indianfriendfinder.com, www.italianfriendfinder.com, www.amigos.com, www.jewishfriendfinder.com, www.nudecards.com, etc. Almost all of defendant's [Various's] sites are adult profile sites designed to connect people with prurient interests.

Worse yet, defendant, Various, Inc., took the illicit profile and listed plaintiff's complete name, with a title listed "Hey! My name is Shelly Elizabeth Hand, what's yours?" and displayed that profile as a special profile to further attract attention to it. Various, Inc., has listed her "handle" as "ShellyHand7897" and "ShellyHand4U" in their postings about her.

Defendant Various, Inc., also organizes the profiles by geographic area for display and re-publication to persons in those areas. Defendant also identifies the person as "Living In" a specified location. Defendant further identified plaintiff as a "Standard Member," which is false. Defendant provides an elaborate search engine to categorize and publish profiles. Defendant actively provides a mechanism to input information and then defendant uses that information to publish profiles which defendant selects and chooses to publish to the searcher.

Just as shown below in another case involving MatchMaker.com, Various, Inc., provides the profile initiator with a laundry listing of sexual desire listed in language provided by Various, Inc., such as "Men," "Groups," "Women," "Couples [two men]," "Couples [two women]," "Erotic Chat or Email," "1-on-1 Sex," "Bondage & Discipline," "Exhibitionism/Voyeurism," "Sadism," "Group Sex (3 or more!)," etc. Various, Inc., alone selected the language. Thereafter, Various, Inc., in the profile creation and development process asks a long list of questions to pinpoint specific information for inclusion in its profile about plaintiff. Various, Inc., also does internal computerized "testing," after which it solely displayed a "description" and scores, such as "purity score" and "compatibility score." Various, Inc., asks questions including a "bra size," "sexual orientation," and others designed to suggest lewd desires. On yet another page of the same profile defendant, Various, Inc., created about plaintiff, Various asked questions including: "Tell us about your most favorite sexual fantasy. Don't hold back!" and "What role playing scenes do you fantasize about?" and "What

location do you fantasize about for a sexual encounter?" and "Using the location you chose as the best fantasy setting for a sexual encounter, tell us about that encounter. Fact or fantasy?"

The next section of the profile asks numerous questions about "Sexual Accessories." Then another section asks numerous questions about "Sexual Interests." Then another section asks numerous questions about "Sexual Activities." Then another section asks numerous questions about "Physical Stuff." Then another section asks numerous questions about "Dreams & Goals." The sections of the profile go on and on. Each of these sections contain menus of responses, just as in MatchMaker.com, discussed infra.

Various, Inc., set up subsystems, such as "HotLists," "Winks," "Private Photo Galleries" [apparently for even more lewd photos than in the profile], and other sub-network methods to link people. Various, Inc., posted pictures of men and women on the purported profile of plaintiff and list the persons as plaintiff's "Friends." Some of the photos show people in various states of undress.

Section 230(f)(2) defines the term "Interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. 230(f)(2). Accordingly, §230 creates immunity for any cause of action that would make Interactive computer services liable for information originating from a third-party. Zeran v. America Online, Inc., 129 F.3d 327, 330 (4th Cir.1997). The statute goes on to define the term "Information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. 230(f)(3). The actions of "Information content providers" are not immune from liability

under §230. Optinrealbig.com, LLC v. Ironport Sys., Inc., 323 F.Supp.2d 1037, 1045 (U.S.D.C. N.D. Cal. 2004).

Regardless of whether defendant qualifies as an "Interactive computer service," defendant has exposure to liability as an "Information content provider." In this case, defendant jointly created and developed the false and defamatory questionnaire, information, and photos, for posting and wide spread dissemination.

In the only known case directly on point, but curiously absent from briefing by defendant, Carafano v. Metrosplash.com Inc., 207 F.Supp.2d 1055, 1066-1067 [U.S.D.C. C.D. Cal. 2002], affirmed,[2] 339 F.3d 1119 [9th Cir. (Cal.) 2003], a well known actress sued a provider of an interactive internet service, and related parties, for invasion of privacy, misappropriation of right of publicity, defamation and negligence, based on a third party's submission of a false profile of the actress to the web site. As in Landry-Bell's case, the information was sexual in nature and not posted by the victim of the posting. Following removal of the case to federal court, the   Carafano defendants filed a motion for summary judgment. Judge Dick Tevrizian held that the provider qualified as an "interactive computer service" provider, for purposes of immunity under the Communications Decency Act of 1996 (CDA), however the provider of the service, allowing users within a particular "community" to post profiles and communicate with each other, was also an "information content provider," partly responsible for the creation or development of the false profile created by responses to its questionnaire, and thus was not entitled to immunity. A provider of an interactive computer service allowing users within a particular "community" to post profile and information and then

---

[2]    **Oddly, though affirming the lower court's ruling, which dismissed plaintiff's claims on grounds other than the holdings of the lower court cited herein, the Ninth Circuit disagreed with Judge Tevrizian's rulings cited herein.** The United States Fifth Circuit and the High Court has yet to face the issues presented herein.

communicate with each other was an "information content provider," partly responsible for the creation or development of a false profile of an actress created by a third party, and thus was not entitled to immunity under the Communications Decency Act of 1996 (CDA), <u>where the provider contributed to the content of the profiles by asking specific questions with multiple choice answers and specific essay questions</u>.

The <u>Carafano</u> court held stated: "Section 230 immunity applies only when the content is not provided by the service entity: No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider. 47 U.S.C. §230©)(1). An information content provider is: [A]ny person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service. Id. at §230(f)(3).  Plaintiff argues that Matchmaker is such an "information content provider." <u>Specifically, she asserts that the questionnaire used to create the Profile was carefully fashioned specifically for the "Los Angeles Metro Community" to include what Defendants determined to be appropriate questions and suitable responses--many of which were sexually charged--for that community</u>. <u>This Court agrees that Matchmaker qualifies an information content provider The users of the Matchmaker website do not simply post whatever information they desire</u>. Rather, a profile for each user is created from the questions asked by Matchmaker and the answers provided. <u>These questions consist of multiple choice questions and essay questions</u>. <u>By conducting its service, Matchmaker does not just provide a site for people to post whatever information they choose</u>. Rather, it provides 62 multiple-choice questions and a series of essay questions tailored for each Matchmaker community. Thus, <u>Matchmaker is an "entity that is responsible, ... in part, for the creation or development of information provided through the Internet</u>

or any other interactive computer service." Defendants argue that the Matchmaker service functions just like a bulletin board or any other type of on-line forum for speech. However, Defendants' argument ignores an important difference between Matchmaker and a bulletin board. Specifically, as stated above, Matchmaker contributes to the content of the profiles by asking specific questions with multiple choice answers and specific essay questions. It is responsible, in part, "for the creation or development of information" contained in the profiles. Indeed, it appears that a member cannot post any other additional information even if he/she desires. By contrast, a bulletin board and the other types of on-line forums designated by Defendants merely provide the forums for the speech and do not contribute to the creation or development of information provided by the users of these services. This Court's determination would be different if Matchmaker simply acts as a conduit of the information, but it does not. Matchmaker takes an active role in developing the information that gets posted. [emphasis added.]."

In Landry-Bell, as in Carafano, defendant is more than a "distributor." In rejecting defendant's contentions, Judge Tevrizian stated: "Defendants further argue that because Matchmaker acted as a distributor and had no reason to know that the profile was false, they cannot be held liable for defamation. While this Court notes that it does not need to reach this further argument based on its determination, above, this Court briefly addresses Defendants' argument. A distributor of defamatory matter is blameless if the distributor has had no notice of its possible falsity. See Restatement (Second) Torts §581 ("one who only delivers or transmits defamatory matter published by a third person is subject to liability if, but only if, he knows or has reason to know of its defamatory character"). "This rule protects libraries and vendors of books, magazines and newspapers." Osmond v. EWAP, Inc., 153 Cal.App.3d 842, 853, 200 Cal.Rptr. 674 (1984). The

rationale is that one who merely plays a secondary role in disseminating information published by another may avoid liability by showing there was no reason to believe it to be a libel. See id. at 852, 200 Cal.Rptr. 674. This Court agrees with Plaintiff and concludes that Defendants are not merely distributors of the Profile. Defendants attempt to hold Matchmaker out as an "electronic library" and assert that just as a traditional library cannot be held liable for defamatory matter contained in a book that it makes available to the public, Matchmaker is not liable for the content of profiles posted by its members. However, this statement is contrary to the evidence and to this Court's discussion, above, with respect to immunity under the CDA. Defendants created and tailored membership questionnaires that served as the basis for the Profile. Every answer made in response to the questionnaires becomes part of the Profile. As such, Matchmaker is more than just a passive conduit of information. This is what distinguishes this case from the case relied on by Defendants, Cubby, Inc. v. CompuServe Inc., 776 F.Supp. 135 (S.D. N.Y.1991), wherein the court found that Compuserve, which provided its subscribers with access to an electronic library of new publications put together by an independent third party and loaded onto the company's computer banks, was a mere "distributor" of information and could not be held liable for defamatory statements made in the news publications. Unlike here, the evidence in Cubby was that Compuserve had no editorial control over the publication at issue. See id. at 140 ("CompuServe has no more editorial control over such a publication than does a public library, book store, or newsstand, and it would be no more feasible for CompuServe to examine every publication it carries for potentially defamatory statements than it would be for any other distributor to do so."). As such, Defendants cannot avail themselves of the

limited distributor's liability. [emphasis added.]." Id. at 1073-1074.[3]

In a Sister Court in this Circuit, the Northern District of Texas in MCW, Inc. v. Badbusinessbureau.com, 2004 WestLaw 833595 (U.S.D.C. N.D. Tex. April 19, 2004), Judge Joe Fish held that the defendants operated a web site that served in part as a consumer complaint forum. Not only did the defendants post consumer complaints, they organized them geographically by company and under various other headings including "Con Artists" and "Corrupt Companies." Id. at *9 fn. 10. Moreover, the defendants contributed to the content by instructing a consumer to take photos to include in his complaint that defendants then posted. Id. at *10. Thus, the defendants did

---

[3]        Of course, to add confusion, the California Appellate Court in Grace v. eBay Inc, 16 Cal.Rptr.3d 192 [Cal. App. 2 Dist. 2004], which authored a very thorough and scholarly examination of Section 230 of the CDA, held that "[W]e conclude that section 230 provides no immunity against liability as a distributor (See Doe v. America Online, Inc., (Fla.2001) 783 So.2d 1010, 1018 (dis. opn. of Lewis, J.).) We decline to follow Zeran v. America Online, Inc. (4th Cir.1997) 129 F.3d 327 and its progeny, including Gentry v. eBay, Inc, supra, 99 Cal.App.4th at page 833, footnote 10, 121 Cal.Rptr.2d 703, and Kathleen R. v. City of Livermore(2001) 87 Cal.App.4th 684, 695, footnote 3, 104 Cal.Rptr.2d 772. For the reasons we have stated, we disagree with the Zeran court's conclusion that because the term "publication" can encompass any repetition of a defamatory statement, use of the term "publisher" in section 230©)(1) indicates a clear legislative intention to abrogate common law distributor liability. Zeran, supra, 129 F.3d at pp. 332-334.) In light of the well-established common law distinction between liability as a primary publisher and liability as a distributor and Congress's expressed intention to overrule an opinion that held the operator of a computer bulletin board liable as a primary publisher rather than a distributor Stratton Oakmont, supra, 1995 WestLaw 323710), we cannot conclude that use of the term "publisher" in section 230©)(1) discloses a clear legislative intention to abrogate distributor liability. We also disagree with the Zeran court's conclusion that for providers and users of interactive computer services to be subject to distributor liability would defeat the purposes of the statute and therefore could not be what Congress intended. Zeran v. America Online, Inc. supra, 129 F.3d at pp. 333-334.) The Zeran court opined that the threat of distributor liability would encourage providers and users to remove potentially offensive material upon notice that the material is potentially offensive rather than risk liability for failure to do so. (Id. at p. 333.) The Zeran court opined further that a provider or user who undertakes efforts to block and filter objectionable material is more likely to know or have reason to know of potentially defamatory material and therefore more likely to be held liable as a distributor, so the threat of distributor liability would discourage undertaking those efforts. Ibid.) The broad immunity provided under Zeran however, would eliminate potential liability for providers and users even if they made no effort to control objectionable content, and therefore would neither promote the development of technologies to accomplish that task nor remove disincentives to that development as Congress intended (47 U.S.C. §230(b)). Rather, the total elimination of distributor liability under Zeran would eliminate a potential incentive to the development of those technologies, that incentive being the threat of distributor liability. (See Note, Immunizing Internet Service Providers from Third-Party Internet Defamation Claims: How Far Should Courts Go?(2002) 55 Vand. L.Rev. 647, 683-685; Freiwald, Comparative Institutional Analysis in Cyberspace: the Case of Intermediary Liability for Defamation(2001) 14 Harv. J.L. & Tech. 569, 616-623.) We conclude that Congress reasonably could have concluded that the threat of distributor liability together with the immunity provided for efforts to restrict access to objectionable material (47 U.S.C. §230©)(2)) would encourage the development and application of technologies to block and filter access to objectionable material, consistent with the expressed legislative purposes."

not merely exercise the traditional rights of a publisher, they contributed to and shaped the content.[4]
Accordingly, they were not immune from liability. Id. This is akin to defendant's [Various, Inc.]
since Various likewise organizes its crude profiles and solicits pictures to be uploaded for inclusion
in the profile.

In Roskowski v. Corvallis Police Officers' Assn., Not Reported in F.Supp.2d, 2005 WestLaw
555398 [U.S.D.C. Ore. 2005], the court denied plaintiffs' claims because the ISP merely posted raw
content supplied by talk radio listeners that emailed in comments. The Court noted that: "The next
question is whether the information was provided by another "information content provider." To
qualify for protection under the Act, the interactive computer service must be merely a vehicle for
others to post or present their ideas and can not control the information provided in any way    .
Carafano, supra, 207 F.Supp.2d at 1066-67 (matchmaking service that required users to answer a
series of multiple choice and essay questions was responsible, in part, for the information provided
through the internet and did not qualify for protection under the Act.) The information complained
about is the anonymous e-mails critical of Plaintiff's performance as chief of police that were made
available through the website. Defendants claim that each of these e-mails was posted directly to the
website by the anonymous author and that Defendants had no control over who posted or what was
posted on the website. Plaintiff has offered no evidence to the contrary. All of the e-mails presented
to the court were addressed to the mayor, members of the Corvallis city council and/or radio talk
show host Lars Larson and were written by individuals under fictitious names. There is no evidence
that the e-mails were forwarded to Defendants prior to being posted to the website or that Defendants

---

[4]        Judge Fish specifically noted that "Section 230(c) immunity is not so broad as to extend to an
interactive computer service that goes beyond the traditional publisher's role and takes an active role in creating or
developing the content at issue. [emphasis added.]"

had <u>any control over the information contained in the e-mails that were posted on the website</u>. The information complained about by Plaintiff was provided solely by an information content provider other than Defendants. [emphasis added.]."

## <u>Notice Pleading</u>

Fed. R. Civ. P. 8(f) requires a liberal reading of complaints. <u>Yamaguchi v. United States Dept. of the Air Force</u>, 109 F.3d 1475 [9th Cir. 1997] [Ha.]. A dismissal must be reversed unless it appears to a certainty that the plaintiff is entitled to no relief under any set of facts that could be proved. Id.; <u>Ascon Properties, Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1155 (9th Cir. 1989). Notice pleading does not require a claimant to set out in detail the facts upon which she bases her claim. Id. Instead, all that Fed. R. Civ. P. 8(a)(2) requires is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the general facts upon which it rests. Id. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Id. Thus, these liberal pleading rules only require that the averments of the complaint sufficiently establish a basis for judgment against the defendant. Id.

Under the federal practice of "notice pleading," Plaintiff must provide a short and plain statement of the claims alleging she is entitled to relief. Federal Rule of Civil Procedure 8(a); <u>Janke Construction Co. v. Vulcan Materials Co.</u>, 527 F.2d 772 (7th Cir. 1974); <u>Hrubec v. Nat. R. Pass. Corp.</u>, 981 F.2d 962 (7th Cir. 1992). Plaintiff is not required under Rule 8(a) to allege a cause of action or legal theory of the case. <u>Hostrop v. Board of Junior College District No. 1</u>, 523 F.2d 569 (7th Cir. 1975), cert. denied, 425 U.S. 963, 48 L.Ed.2d 208, 96 S.Ct. 1748 (1975). There are "no technical forms of pleading" and Plaintiff's Original Complaint conforms with Rules 8(a), 8(e), 8(f)

and 10 of the Federal Rules of Civil Procedure. Maynard v. General Electric Company, 486 F.2d 538 (4th Cir. 1973).

Plaintiff is only required to set forth a short, concise and plain statement of her claim sufficient to advise the opposing party of the nature of the claim. Neizil v. Williams, 543 F.Supp. 899 (U.S.D.C. M.D. Fla. 1982); Ambling v. Blackstone Cattle Co., 658 F.Supp. 1459 (U.S.D.C. N.D. Ill. 1987). The complaint must be in general terms and need not be stated within a framework of a cause of action. Stanley v. Harper Buffing Machine Co., 28 F.R.D. 579 (U.S.D.C. Conn. 1961). Legal conclusions or statements of law must not be alleged in the complaint. Curacao Trading Co. v. Fed. Ins. Co., 3 F.R.D. 203 (U.S.D.C. N.Y. 1942). Further, plaintiff need not allege a theory of action. Id. Plaintiff need not specify under what law(s) her case arises. Ghebreslassie v. Coleman Secur. Svc., 829 F.2d 892 (9th Cir. 1987). Plaintiff need not plead state laws. Lumbermans Mut. Cas. Co. v. Norris Grain Co., 343 F.2d 670 (8th Cir. 1965). State laws should not be plead as the federal court will take judicial notice of applicable state laws. Bower v. Casanave, 44 F.Supp. 501 (U.S.D.C. N.Y. 1941). Plaintiff need not state her legal theories and discuss all applicable laws or laws which might be applied by the court. Federal courts employ notice pleadings. Plaintiff has done much more than merely put Defendants on notice of her claims. Fed.R.Civ.Proc. 8.

## Various, Inc.'s Motion to Dismiss Should Be Denied

Pursuant to Federal Rules of Civil Procedure 12(b)(6), and the jurisprudence construing same, when faced with a Motion to Dismiss under Rule 12(b)(6), the court must treat the facts alleged in the complaint as admitted. Ward v Hudnall , 366 F.2d 247 (5th Cir. 1966);    Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982).

Furthermore, the complaint is sufficient if it shows that plaintiff is entitled to any relief, regardless of whether it alleged the proper theory of the case. Janke Construction Co. v. Vulcan Materials Co., 527 F.2d 772 (7th Cir. 1974); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1833 (1989). Plaintiff's allegations must be treated and presumed as true and correct in all respects and plaintiff's factual allegations are to be liberally construed so that plaintiff is likewise afforded each and every favorable inference to be drawn therefrom. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974); Miree v. Dekalb County, Georgia, 433 U.S. 25, 97 S.Ct. 2490 (1977). If admitted and taken as true, the allegations of the plaintiff's complaint do state claims upon which relief can be granted. Motions to Dismiss are not favored and are granted only when it appears to a certainty that no set of facts could be proven at trial which would entitle plaintiff to any relief. Dann v. Studebaker-Packard Corp., 288 F.2d 201 (6th Cir. 1961).

Defendant's, Various, Inc.'s motion to dismiss should be denied.

Respectfully submitted:

**BODENHEIMER, JONES & SZWAK**

By: _____

**DAVID A. SZWAK, LBR #21157**, TA
401 Market Street, Ste. 240
American Tower
Shreveport, Louisiana 71101
(318) 424-1400
FAX 424-1476
www.bjswlaw.com
**COUNSEL FOR PLAINTIFF**

## CERTIFICATE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed, by first class mail, properly addressed, with prepaid postage affixed, to opposing counsel of record, on this the _____ day of _____, 2006.

_____
**DAVID A. SZWAK**